J-A28002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.L.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.L.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1513 EDA 2016 |

Appeal from the Decree April 18, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2015-A0140

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                **FILED DECEMBER 29, 2016**

T.L.S. ("Father") appeals from the decree entered on April 18, 2016, granting the petition filed by A.S.L. ("Maternal Aunt"); E.S.L.,[1] the husband of A.S.L.; and R.S. ("Maternal Grandfather") (collectively, "Petitioners")  for the involuntary termination of his parental rights to J.L.S., ("Child"), born in February 2011, pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (2).[2]

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case, which we incorporate herein. **See**

_____

* Retired Senior Judge assigned to the Superior Court.

[1] While the trial court opinion, filed 6/16/16, refers to Maternal Aunt as A.S., and her husband as L.L., a review of the trial court record reveals that the correct initials for Maternal Aunt are A.S.L., and her husband is E.S.L.

[2] L.S. ("Mother") filed her consent to termination.

Trial Court Opinion, 6/16/16, at 1-5. On July 21, 2015, Petitioners filed a petition seeking the involuntary termination of the parental rights of Father to Child. A hearing on the petition was held on April 13, 2016. The trial court heard testimony from Father, and Stephen Miksic, Ph.D., a licensed psychologist. On April 18, 2016, the trial court entered a decree terminating Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

Father timely appealed. He has duly complied with Pa.R.A.P. 1925(a)(2)(i) and (b).

Our standard of review is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, governs termination of parental rights. That section requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

- 2 -

evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to § 2511(a)(1), (2), and (b). We need only agree with the trial court as to any *one* subsection of (a), as well as subsection (b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We choose to analyze the court's decision to terminate under subsections (a)(1) and (b), which provide as follows.

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing,

furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

This Court has found, concerning review of the statutory requirements

that

[t]o satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [S]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [S]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

- 4 -

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

Furthermore,

[a]lthough it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citations omitted).

We can address Father's first two and final issues together. Father argues that the trial court erred when it failed to consider evidence of the history of the case as to his efforts beyond the six-month period of time preceding the filing of the petition to terminate his parental rights to Child; that the trial court erred in mechanically applying the six-month period; and that there was insufficient evidence to terminate his parental rights under § 2511(a). **See** Appellant's Brief, at 6.

The trial court considered the case in its entirety; it did not mechanically focus solely on the six-month statutory period.

At the hearing, Father testified that, while he did not know where Child went to school, he *never* attempted to learn what school Child attended. **See** N.T., 4/13/16, at 28. Father further testified that he *never* contacted Petitioners to ask how he could help raise Child. **See id**. at 40. Father stated that he has not sent Child any cards, presents, letters, or requests for pictures since February 1, 2016. **See id**. at 50.

The trial court found that "by his actions within the six months prior to the filing of the instant [p]etition and beyond, [Father] has exhibited a settled intent to relinquish a parental claim to [Child], as well as failed to perform his parental duties to [Child]." Trial Court Opinion, filed 6/16/16, at 8. Further, the trial court stated, "Father repeatedly accused Petitioners of obstructing his visits with Child. Yet other than enlisting the aid of his sister,

Father made no affirmative efforts to address or remedy the perceived obstacles." *Id*.

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. **See In re M.G.**, 855 A.2d 68, 73-74 (Pa. Super. 2004). Accordingly, we find that the trial court's determinations regarding § 2511(a)(1) are supported by sufficient, competent evidence in the record.

While Father does not discuss § 2511(b) in the argument section of his brief, we will nonetheless consider this issue, as our case law requires us to engage in such an analysis. **See In re C.L.G.**, 956 A.2d 999, 1010 (Pa. Super. 2008) (*en banc*) (considering § 2511(b) despite the appellant's failure to challenge the trial court's analysis).

The trial court must also consider how terminating Father's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). Pursuant to § 2511(b), the trial court is specifically directed to engage in a consideration of whether termination of parental rights would best serve the developmental, physical and emotional needs of the child. **See In re C.M.S.**, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id*., at 1287 (citation omitted). We have instructed that the court must also discern the nature and status of the

parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***See id***.

Here, the trial court found

[]a bond has developed between Petitioners and [Child] that has been described as healthy and in [Child's] best interests due to the stability it provides. Based on the evidence and testimony presented at trial, termination of the parental rights of [Father] will best serve the needs and welfare of [Child] and will not irreparably harm him.

Trial Court Opinion, 6/16/16, at 10.

Our review of the record reveals no evidence of a bond between Father and Child. We have stated, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." ***In re K.Z.S.***, 946 A.2d 753, 763 (Pa.Super. 2008). At the hearing, Dr. Miksic testified that Child refers to A.S.L. and E.S.L. "mama and daddy" and that Child indicated that they provide him with the most affection and comfort. N.T., Hearing, 4/13/16, at 146. Dr. Miksic further testified when he asked Child if he wanted to see Father, Child said no. ***Id***., at 147. Dr. Miksic opined "there isn't any basis for [Child] to have any concept of a relationship with [Father], let alone any type of emotional attachment to [Father] that would affect [Child] if his contact with [F]ather was to continue as it is, basically no contact." ***Id***., at 151.

We find that the competent evidence in the record supports the trial court's determination that there was no bond between Father and Child which, if severed, would be detrimental to Child, and that the termination of

Father's parental rights would best serve the needs and welfare of Child. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74.

In his third issue, Father contends that the court abused its discretion "when it excluded evidence of the Maternal Grandfather's actions and prospective adoptive parents' actions in creating obstacles to Father's contacts with the subject minor child, vis-à-vis the custody with the Paternal Aunt." Appellant's Brief, at 6. This, however, is not what he argues in his brief. Instead, in the argument section of his brief, he focuses on the trial court's refusal to permit inquiry into how Child came to live with the prospective adoptive parents. *See id*., at 20.

The section of the transcript from the hearing that Father cites is during his cross-examination of the *bonding* expert, Stephen Miksic, Ph.D. Father, through counsel, sought to ask why a change in custody resulted in his placement in the prospective adoptive parents' home. *See* N.T., Hearing, 4/13/16, at 171. There was an objection from opposing counsel that such inquiry "has nothing in the world to do with the connection, the attachment, the bond…." *Id*., at 171-172. The trial court sustained the objection, observing, "We are not concerned – my understanding of this whole bonding thing with the [prospective adoptive parents] and [Child] does not involve how he got there, but what is there now, what bond there is now." *Id*., at

172. The trial court's sustaining of the objection was eminently proper for the reasons it articulated. Father's question sought irrelevant evidence.

Father also argues that the trial court sustained an objection by opposing counsel when his counsel attempted to ask Paternal Aunt why she had not seen Child. *See* Appellant's Brief, at 21. Father, however, fails to provide a citation to the notes of testimony. We refuse to comb through the record to find the trial court's alleged error. Accordingly, we find this claim waived. *See* Pa.R.A.P. 2119(c); *Commonwealth v. Hetzel*, 822 A.2d 747, 765 (Pa. Super. 2003).

In his fourth issue, Father maintains that the trial court deprived him of his due process rights when it did not permit him to present witnesses to testify on his behalf. Father, however, provides no citation to the record where he sought to present such witnesses and the trial court refused to allow their testimony. He alludes to this throughout his brief, but fails to provide any concrete citation to the record. This claim is, therefore, waived. *See id*.

After a careful review, we affirm the decree terminating Father's parental rights on the basis of § 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/29/2016</u>